UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY JARVIS, *et al*.,

                    Plaintiffs,

       -against-                        5:14-cv-1459 (LEK/TWD)

GOVERNOR ANDREW CUOMO, in His
Official Capacity as Governor of the State
of New York, *et al*.,

                    Defendants.

## AMENDED MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This action was commenced by ten individuals (collectively, "Plaintiffs") who operate home child care businesses in the State of New York (the "State" or "New York"). Dkt. No. 1 ("Complaint") ¶ 1. In the Complaint, Plaintiffs assert that a State law authorizing child care providers to designate a representative to collectively bargain with the State violates Plaintiffs' First Amendment rights. Id. On April 30, 2015, the Court granted partial motions to dismiss filed by Defendants Governor Andrew Cuomo, New York State Office of Children and Family Services ("OCFS"), Commissioner Sheila Poole (together, "State Defendants"), and Civil Service Employees Association ("CSEA") (collectively, "Defendants"). Dkt. No. 27 ("April Order"). In the April Order, the Court dismissed Count I of the Complaint in its entirety and also dismissed all claims for money damages against the State Defendants. Id. Presently before the Court are Motions to dismiss Count II of the Complaint filed by the State Defendants and the CSEA pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. Nos. 28 ("State Defendants' Motion"); 28-1 ("State Defendants' Memorandum of Law"); 29 ("CSEA Motion"); 29-1 ("CSEA Memorandum of Law").

For the following reasons, Defendants' Motions are granted and the case is dismissed. Accordingly, Plaintiffs' Motion for summary judgment, which was stayed pending the Court's resolution of the pending Motions to dismiss, is now dismissed as moot. Dkt Nos. 36 ("Motion for Summary Judgment"); 38 ("Order Adjourning Summary Judgment Deadlines").

## II.   BACKGROUND[1]

The Court presumes the parties' familiarity with the facts and history of this case, and recites only those facts necessary for the resolution of the pending Motions. For a complete recitation of the background in this case, reference is made to the April Order.

Count II of Plaintiffs' Complaint alleges that the "fair share" fees authorized under a Memorandum of Agreement ("Agreement") between the State and CSEA which took effect on October 1, 2009, violate 42 U.S.C. § 1983 as well as the First Amendment. Compl. ¶¶ 21, 39, 41; see also Dkt. No. 1-1 ("Agreement"). On July 2, 2010, the State enacted legislation authorizing the collection of fair share fees from non-member child care providers. Compl. ¶ 22. The State and CSEA began assessing the fair share fees from non-members in January 2012. Id. ¶ 25. On September 27, 2013, the State amended the law to extend its expiration until September 30, 2016. Id. ¶ 26. On June 30, 2014, the Supreme Court held in Harris v. Quinn, 134 S. Ct. 2618, 2626 (2014), that the First Amendment prohibited the collection of agency fees from personal assistants who either did not support or were non-members of a union. Plaintiffs received a letter from CSEA

---

[1] Because this action is presently before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. See Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004); Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000). However, because the Court is reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court will not "draw inferences from the complaint favorable to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).

in November 2014, stating that in order to comply with Harris, "CSEA has requested that the State stop deducting fair share fees from non-members," and that the State "is reviewing and modifying its system to accomplish this." Compl. ¶ 33.

In January 2015, the State ceased withholding agency fee payments from the paychecks of non-members. Dkt. No. 29-2 ("Declaration of Robert Compani") ¶ 7. Shortly thereafter, CSEA refunded any agency fees that had been deducted from non-members after July 1, 2014, including interest. Id. ¶ 8. Simultaneously, CSEA renegotiated the provision in the collective bargaining agreement ("CBA") with the State that had previously provided for the assessment of fair share fees. CSEA Mem. at 3. The new CBA, which will remain in effect until September 30, 2017, was signed by CSEA on April 22, 2015, signed by the pertinent State officials between April 24 and May 12, 2015, and eventually ratified by CSEA membership. Id. at 4; Dkt. No. 33 ("Opposition") at 4. The terms of the new CBA provide in relevant part:

> OCFS and the Union agree to end the deduction and transfer to the Union of fair share payments from those Covered Child Care Providers who do not choose to be members of the Union, or those that did not authorize the deduction of union dues but who receive subsidy payments directly from a LDSS, other than the City of New York, under the Social Services Law. The Union will assume all the design, development and implementation costs for the necessary changes to the State's existing payment system(s), and any other associated administrative costs necessary, to cease the collection of fair share payments that are deducted and transferred to the Union from payments due to the applicable Covered Child Care Providers.

Dkt. No. 29-9 ("Updated Collective Bargaining Agreement").

Defendants move to dismiss Count II of the Complaint on the basis that Plaintiffs' claims are now moot. State Defs.' Mot.; CSEA Mot. Plaintiffs agree that prospective relief is no longer necessary in light of the new CBA, which does not require compulsory fees. Opp'n at 1. Plaintiffs also concede that several Plaintiffs' claims for retroactive relief were satisfied when CSEA returned

3

any fees seized after the Harris decision was issued. Id. However, Plaintiffs contend that four Plaintiffs—Sheree D'Agostino, Michele Dennis, Katherine Hunter, and Mara Sloan—have not been made whole because they have not received compensation for fair share fees that were seized from them prior to Harris. Id. Plaintiffs contend that these four Plaintiffs are entitled to refunds for fees that were unlawfully assessed between January 2012 and July 1, 2014. Compl. ¶ 12; Opp'n at 4.

CSEA argues that "[w]hile this putative claim for repayment of fees paid prior to the Harris decision may not be moot, it is without merit and therefore subject to dismissal under Rule 12(b)(6)." CSEA Mem. at 8.

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

A district court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See FED. R. CIV. P. 12(b)(1). When resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings without converting the motion into a motion for summary judgment. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S., 386 F.3d at 110. "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id. Since "jurisdiction must be shown affirmatively . . . that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F. 3d 129, 131 (2d Cir. 1998).

4

**B. Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

**IV. DISCUSSION**

**A. Mootness**

Defendants argue that Plaintiffs' second cause of action should be dismissed as moot. State Defs.' Mot. at 4-6; CSEA Mot. at 4-7. A party seeking to dismiss a case as moot bears a heavy burden. Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005).

5

"Article III of the Constitution limits federal 'judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'" United States Parole Comm'n v. Geraghty, 445 U.S. 388, 395 (1980). "[A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." Russman v. Bd. of Educ., 260 F.3d 114, 118 (2d Cir. 2001). "When the issues in dispute between the parties 'are no longer live,' a case becomes moot." Lillbask ex rel. Mauclaire, 397 F.3d at 84 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" Doyle v. Midland Credit Mgmt., 722 F.3d 78, 80 (2d Cir. 2013) (quoting Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994)). Mootness must be judged in the present, not at the time the complaint was filed. Stronko v. Bergin, 843 F. Supp. 827, 828-29 (N.D.N.Y. 1994).

"Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). However, if after voluntarily ceasing to engage in the allegedly illegal activities "the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," then a finding of mootness is appropriate. Campbell v. Greisberger, 80 F.3d 703, 706 (2d Cir. 1996).

*1. Recurrence*

A case is not moot unless there is "no reasonable expectation" that the challenged actions will be repeated. W.T. Grant, 345 U.S. at 633. Where a defendant has voluntarily ceased

enforcement of a policy, a case is only rendered moot if it is "absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 189 (2000) (quoting Concentrated Phosphate Exp. Ass'n, 393 U.S. at 203.

Defendants contend, and Plaintiffs do not dispute, that the alleged wrongful behavior is unlikely to recur. After learning of the Supreme Court's decision in Harris, and prior to this lawsuit being filed, CSEA ceased collecting fair share fees from non-members and informed non-members in writing that it was doing so in order to comply with Harris. Compani Decl. ¶ 4. Defendants concede that Harris "is applicable to this bargaining unit and thus prohibits any agency fee requirement." State Defs.' Mem. at 5. In their respective Motions, Defendants disclaim any intent to resume the assessment of the fair share fee in the future. Id. at 5; CSEA Mem. at 5. It is well established that a defendant cannot reasonably be expected to resume conduct that it acknowledges is contrary to binding precedent. See Granite State Outdoor Advert. v. Town of Orange, 303 F.3d 450, 451-52 (2d Cir. 2002) (finding voluntary cessation satisfied where there was no evidence that town had any intention of returning to prior regulatory scheme); see also Carlson v. United Acads., 265 F.3d 778, 786 (9th Cir. 2001) ("It is unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient and had attempted to correct.").

Moreover, Defendants claim that it is not within their power to resume collecting the fees, even if they wanted to do so. State Defs.' Mem. at 5. They contend that the CSEA has no authority to unilaterally compel non-members to pay fair share fees, and the CBA that previously authorized the fair share fees has been replaced with a new CBA which expressly promises "to end the deduction and transfer to the Union of fair share payments." State Defs.' Mem. at 5; Compani Decl.

7

¶ 17; see also Updated Collective Bargaining Agreement.  The new CBA will be in effect until September 2017, at which time the statute that provided the underlying authorization for the fair share fee will have expired.  State Defs.' Mem. at 5; see also Compl. ¶ 26 (noting that Chapter 378 of the Laws of 2013 expires on September 30, 2016).  Accordingly, the Court finds that Defendants are unlikely to reinstate the fair share fees, thus satisfying the first prong of the voluntary cessation analysis.

### 2. Interim Relief

Turning to the second prong, Defendants must show that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Campbell, 80 F.3d at 706.  Here, each of the Plaintiffs from whose paychecks agency fees were deducted at any time following the Harris decision has been repaid for the deducted amount, along with interest.  Compani Decl. ¶ 8.  Where, "with respect to the plaintiffs' individual claims for damages, nothing of practical significance remain[s] to adjudicate," the claim is moot.  ABN Amro Verzekeringen BV v. Geologistics Americas, 485 F.3d 85, 96 (2d Cir. 2007).  However, Plaintiffs contend that Plaintiffs D'Agostino, Dennis, Hunter, and Sloan have not received all of the damages they are entitled to, as these Plaintiffs have not been reimbursed for fair share fees that were deducted from their paychecks prior to Harris.  Opp'n at 1.

Defendants concede that Plaintiffs D'Agostino, Dennis, Hunter, and Sloan have not been reimbursed for fair share fees deducted prior to Harris, yet they do not specifically address why these claims are moot.  See CSEA Mem. at 7.  In fact, Defendants concede that "this putative claim for repayment of fees paid prior to the Harris decision may not be moot."  Id. at 8.  The Court concludes that for the purposes of mootness, Plaintiffs D'Agostino, Dennis, Hunter, and Sloan have

8

not been made whole. Accordingly, the Court will move on to consider whether these four Plaintiffs have stated a claim pursuant to Rule 12(b)(6).

**B. Rule 12(b)(6)**

Defendants argue that Plaintiffs' claim for reimbursement prior to Harris fails "because damages cannot be awarded against a private party sued under § 1983 for actions taken in good faith based on a presumptively constitutional statute." CSEA Mem. at 8. Plaintiffs counter that there is no good-faith defense to Plaintiffs' First Amendment claim, and even so, CSEA did not act in good faith. Opp'n at 5-14.

It is well established that the doctrine of qualified immunity does not extend to private actors. Wyatt v. Cole, 504 U.S. 158, 168-69 (1992). However, the Court in Wyatt expressly stated that "we do not foreclose the possibility that private defendants faced with § 1983 liability . . . could be entitled to an affirmative defense based on good faith." Id. The Supreme Court remanded the case to the Fifth Circuit, which held "that private defendants sued on the basis of Lugar may be held liable for damages under § 1983 only if they failed to act in good faith in invoking the unconstitutional state procedures, *that is*, if they either knew or should have known that the statute upon which they relied was unconstitutional." Wyatt v. Cole, 994 F.2d 1113, 1118 (5th Cir. 1993) (cited by Pinsky v. Duncan, 79 F.3d 306, 311 (2d Cir. 1996)).

Plaintiffs argue that the good-faith defense is limited to cases involving garnishment or attachment. Opp'n at 6-8. However, the defense has been interpreted broadly by courts when analyzing claims for money damages against private actors pursuant to § 1983, and has been made available in cases involving an array of constitutional torts. See, e.g., Clement v. City of Glendale, 518 F.3d 1090, 1096-97 (9th Cir. 2008) (finding good-faith defense available for a claim of

9

insufficient notice under the Due Process Clause); Hunsberger v. Wood, 564 F. Supp. 2d 559, 562 (W.D. Va. 2008) (finding good-faith defense available for Fourth Amendment claim of illegal home search), rev'd on other grounds, 570 F.3d 546 (4th Cir. 2009); Franklin v. Fox, No. C 97-2443, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (finding good-faith defense applicable to Sixth Amendment claim of denial to the right to counsel); Robinson v. San Bernadino Police Dep't, 992 F. Supp. 1198, 1207-08 (C.D. Cal. 1998) (applying good-faith defense to § 1983 claims based on violations of the Fourth, Eighth, Thirteenth, and Fourteenth Amendments). Plaintiffs do not identify any reason or authority suggesting that the good-faith defense should not be available for private defendants facing § 1983 claims premised on a violation of the First Amendment. Accordingly, the Court finds that the good-faith defense is available to the CSEA Defendants.

Having determined that the good-faith defense is available in First Amendment cases, the Court must now determine whether Defendants knew or should have known that the fair share fee statute was unconstitutional prior to Harris. The Second Circuit has held that "it is objectively reasonable to act on the basis of a statute not yet held invalid." Pinsky, 79 F.3d at 313; see also Wyatt, 504 U.S. at 174 (Kennedy, J., concurring) ("[A] private individual's reliance on a statute, prior to a judicial determination of unconstitutionality, is considered reasonable as a matter of law."). Plaintiffs' Complaint does not contain any allegations that CSEA acted in bad faith in collecting the fee prior to Harris. To the contrary, the record indicates that CSEA acted in good faith when relying on the validly enacted state legislation that authorized the fair share fee as well as prior Supreme Court precedent authorizing a similar payment assessment in Abood v. Detroit Board of Education, 431 U.S. 209 (1971). Moreover, the Court finds that Defendants took reasonable measures to make Plaintiffs whole after the Harris decision was issued. Accordingly, the Court

10

finds that the good-faith defense applies to the CSEA Defendants and therefore, they cannot be liable for damages based on the collection of fees from Plaintiffs prior to July 1, 2014.

**V.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the State Defendants' Motion (Dkt. No. 28) to dismiss Plaintiffs' second cause of action pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED**; and it is further

**ORDERED**, that Defendant CSEA's Motion (Dkt. No. 29) to dismiss Plaintiffs' second cause of action pursuant to Federal Rule of Civil Procedure 12(b)(1) is **GRANTED in part** as to the dismissal of any claims made by Plaintiffs other than D'Agostino, Dennis, Hunter, and Sloan on the basis that these claims are moot and **DENIED in part** as to claims made by Plaintiffs D'Agostino, Dennis, Hunter, and Sloan; and it is further

**ORDERED**, that Defendant CSEA's Motion (Dkt. No. 29) to dismiss Plaintiffs' second cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 36) for summary judgment is **DISMISSED as moot**; and it is further

**ORDERED**, that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	January 21, 2016
	Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge